Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Donald L. Wilkerson
Attorney at Law
P.O. Box 42
Laupahoehoe, HI 95764
(808) 533-4447
Hawaii Bar No. 5730
don@allislandslaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
* *Pro Hac Vice Paperwork Forthcoming*

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| MAUI AMMO AND GUN SUPPLY, HAWAII FIREARMS COALITION, and CHRISTY GUSMAN<br><br>Plaintiffs,<br><br>v.<br><br>MAUI COUNTY, HAWAII and MAUI COUNTY COUNCIL<br><br>Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

COME NOW the Plaintiffs, Maui Ammo and Gun Supply, Hawaii Firearms Coalition, and Christy Gusman ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendants as follows:

### I.     PARTIES

1. Plaintiff Maui Ammo and Gun Supply ("MAGS") is a Federal Firearm Licensee ("FFL") located at 851 Eha St. #C, Wailuku, Hawaii in Maui County.

2. Plaintiff Hawaii Firearms Coalition ("HIFICO") is an organization founded to protect and unify Hawaii's firearm owners and those that believe in the constitutionally protected right to keep and bear arms and is incorporated in Honolulu, Hawaii. HIFICO has members and supporters throughout Hawaii, and in Maui County, who wish to purchase electric arms, including stun guns and Tasers, with which to defend themselves with in Maui County.

3. Plaintiff Christy Gusman is an adult female resident of the State of Hawaii and resides in Wailuku, Maui County.

4. Defendant Maui County is and has been a duly organized municipal corporation of the State of Hawaii at all times relevant hereto. Defendant Maui County can be served with process by serving the Department of the Corporation Counsel, County Of Maui, 200 S High St., Wailuku, HI 96793.

5. Defendant Maui County Council is the legislative and policy-making body of the Maui County Government. Defendant Maui County Council can be

served with process by serving the Department of the Corporation Counsel, County Of Maui, 200 S High St., Wailuku, HI 96793.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

7. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III. STATEMENT OF FACTS

### a. The Second Amendment

8. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

9. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

10. Handguns are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

11. Electric arms, including Tasers and stun guns, are also protected by the Second Amendment, and every court so far that has ruled on this issue has found a complete ban unconstitutional.

### b. Hawaii Law

12.  On July 7, 2021, the Governor of Hawaii signed into law Act 183 which repealed Hawaii's existing ban on the sale and possession of electric arms, including Tasers and stun guns, and replaced it with a licensing scheme.[1]

13.  This licensing scheme created a new section, HRS § 134-83 requiring that persons "desiring to sell, offer to sell, distribute or otherwise transfer electric guns or cartridges to a person in the State, either at wholesale or retail, shall annually file an application for a license to do so with the county in which the person desires to conduct business or within the county to which the person intends the electric guns or cartridges to be sold, offered for sale, distributed, or otherwise transferred using forms prescribed by the county."

14.  Hawaii's licensing scheme sets forth the requirements for either individuals or businesses to apply for a license. *See* HRS § 134-83(b) and (c).

15.  HRS § 134-83(e) mandates that "Upon receipt of the completed application form and the annual licensing fee of $50 payable to the county, the county shall review the application and may issue a license to the applicant if it determines that the applicant meets all the requirements of this section."

---

[1] https://www.capitol.hawaii.gov/session2021/bills/GM1311_.pdf.  A current copy of the law, codified into the statutes, can be found at https://www.capitol.hawaii.gov/hrscurrent/Vol03_Ch0121-0200D/HRS0134/HRS_0134-0083.htm.

16. For individuals wishing to purchase electric arms, the licensee must "conduct a criminal history background check of the recipient. At minimum, the criminal history background check shall be a name—based search of the adult criminal conviction records maintained by the Hawaii criminal justice data center." See HRS § 134-84(f). Additionally, the purchaser must sign a declaration that he or she is not prohibited from owning an electric arm. *Id.*

17. HRS § 134-84(g) requires that the licensee must also "provide an informational briefing to the recipient," which includes, *inter alia*, safe handling of electric arms, dangers of electric arms, existing state laws on electric arms, and proper disposal of electric arms.

18. Act 183 went into effect on January 1, 2022 and became the law of Hawaii.

### c. Maui County and Maui County Council

19. Maui County, through the Maui County Council, have instituted a practice, policy, and custom of banning the sale, ownership and possession of electric arms, including Tasers and stun guns because they have so far, refused to allow businesses to sell electric arms and thus, Maui residents cannot purchase them.

20. On March 14, 2022, Defendant Maui City Council held a hearing on a draft ordinance "relating to electric gun dealer licensing" and acknowledging that Act 183 was signed in July 2021 and went into effect on January 1, 2022.[2]

21. During the meeting, it was stated that there were retailers in Maui who have already purchased inventory but were "told" that they couldn't sell any of the inventory until Maui passed an Ordinance allowing the sale. *See Id*. at 1:30:48.

22. Despite Act 183 taking effect on January 1, 2022, and Defendants having notice of the new law being signed into law on July 7, 2021, Defendants have failed to take the proper steps in order to effectuate the implementation of Act 183, and thus, have perpetuated a complete ban on the sale, ownership and possession of electric arms.

23. Because electric arms are protected under the Second Amendment, such a ban violates the Second Amendment to the United States Constitution.

24. As such, Defendants' policy, practice, and custom of banning electric arms render them liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for their unconstitutional practice of violating the Second Amendment.

---

[2] http://mauicounty.granicus.com/MediaPlayer.php?view_id=1&clip_id=1574&meta_id=385922.

25. But for Defendants' policy, practice, and custom of not allowing business to sell electric arms, qualified businesses would be able to sell electric arms, and qualified individuals would be able to purchase electric arms in Maui County.

26. Maui County Council's policy, practice and custom of keeping Hawaii's now-repealed ban in place is evident from the Ordinance it is trying to pass to "provide for the sale and transfer of electric guns and cartridges in the County, as required and in conformity with Chapter 134, Hawaii Revised Statutes."[3]

27. Instead of faithfully tracking HRS §§ 134-83 and 134-84, Maui County Council asked during the March 14, 2022 hearing how they could be more restrictive than state law.

28. The Council found a way.

29. Maui County Council included in this Ordinance that "[e]ach licensee must obtain and keep current at all times throughout the duration of the license period a commercial general liability policy with the following minimum limits and coverages placed with an insurance carrier authorized to do business in the State of Hawai'i with a minimum AM Best credit rating of A–VII."

30. Then, the Council included that the policy licensed electric arms dealers will be required to purchase is a "primary commercial general liability policy with

---

[3] https://mauicounty.legistar.com/View.ashx?M=F&ID=10670356&GUID=8C0897CB-206A-4AA2-A4F8-4F5F872C6A69.

7

$2,000,000 per occurrence and $3,000,000 annual aggregate, which must include a duty to defend the County if the County is sued as a result of the licensee's business operations."

31. Additionally, the council will require "[a]n umbrella policy written on a 'following for'" basis with $2,000,000 per occurrence and $3,000,000 annual aggregate."

32. This Ordinance is aimed at dealers in electric arms, which as the Council discussed, are generally regarded as less than lethal weapons. However, this insurance requirement is so far out of the normal, it will be extremely expensive, if it can even be obtained, and is an attempt to effectuate a ban on electric arms through requirements that cannot be met.

33. Thus, Defendants' insurance requirement is not sufficiently tailored to a governmental interest.

34. And finally, the County wants "[t]he County, its officers, and employees must be named as an additional insured under the licensee with a duty to defend the County from any claims arising from the license to sell and the use of electric guns or cartridges."

35. As a comparator, a regular store that sells regular firearms (handguns, rifles and shotguns) and ammunition does not have a separate requirement to

maintain such an outrageously high-limit insurance policy and to name the County and its all of its employees as named insureds.

36. The Council does have other insurance requirements in other circumstances, namely a "dangerous dog" ordinance that requires owners of "dangerous dogs" to "[p]rocure and produce evidence to animal control of liability insurance in an amount not less than $50,000 to cover the medical and/or veterinary costs resulting from potential future actions of the dog." *See* Maui Code 6.04.046(c)(4).

37. Article VII - Commercial Ocean Recreational Activity,[4] sets forth insurance requirements for those high-risk activities, which include less insurance than what the Council wants to mandate for constitutionally protected arms. *See* Maui Code 13.04A.320 ($1,000,000 per occurrence/$2,000,000 per aggregate). And this does not require an umbrella or an insurance company "with a minimum AM Best credit rating of A–VII" as required in the electric arms ordinance.

38. There is no question that "commercial ocean recreational activity" is more dangerous than a business undertaking a normal transaction process of selling an electric arm.

---

[4] These are generally high-risk activities like thrill craft, parasailing, water sledding, or commercial high-speed boating, operating a motorized vessel towing a person engaged in parasailing, or operating a motor vessel towing a person engaged in water sledding.

39. At bottom, this is an attempt to block Hawaii's new state law allowing the People to keep and bear arms by mandating outrageous requirements for sellers of the devices that Hawaii law has legalized and operates as a ban.

### d. Plaintiff Maui Ammo and Gun Supply

40. Plaintiffs MAGS is an FFL in Maui County that wishes to sell electric arms and has customers who wish to purchase electric arms.

41. MAGS purchased inventory and has attempted multiple times to obtain a license from the Defendants to be able to sell his inventory to his customers.

42. However, due to the Defendants' policy, practice, and custom of not allowing business licenses to sell electric arms, MAGS has been unable to sell electric arms, and MAGS' customers have been unable to purchase electric arms from MAGS.

43. MAGS qualifies under Hawaii state law to sell firearms and ammunition already, and would qualify to sell electric arms to customers in Maui County if Defendants would issue MAGS a business license to do so.

44. However, Defendants have not conformed their conduct to the requirements of the Second Amendment and will not allow customers in Maui to purchase electric arms from any dealer, and thus, have violated and are currently violating the Second Amendment.

### e. Plaintiff Hawaii Firearms Coalition

45. Plaintiff Hawaii Firearms Coalition is incorporated in Honolulu, Hawaii.

46. HIFICO focuses on educating its members and supporters on the Second Amendment and Hawaii Second Amendment issues and actively takes part in legal actions when it is necessary to preserve the rights of its members and supporters.

47. HIFICO currently has members and supporters located in Maui County who wish to purchase an electric arm, but are not allowed to because Defendants' policy, practice, and custom maintain a ban on the sale of electric arms in Maui County.

48. As such, HIFICO joins this action to seek to further its goal of defending and protecting the Second Amendment and protect its members' and supporters' rights under the Second Amendment.

49. Neither the claims asserted herein, nor the relief requested require the participation of individual members and supporters in this action and HIFICO can adequately litigate any of the issues raised in this lawsuit without the necessity of naming and joining individual members and supporters in this matter.

50. Additionally, because the right to keep and bear arms is guaranteed by the Second Amendment to the United States Constitution, and every court that has ruled on this issue post-*Caetano v. Massachusetts* has ruled that the Second

Amendment applies to electric arms, the individual members and supporters of HIFICO who are affected by the continued ban on the sale of electric arms in Maui County would have standing to sue in their own right, and thus, HIFICO has associational standing to bring this action on behalf of its members and supporters.

### f. Plaintiff Christy Gusman

51. Plaintiff Christy Gusman ("Gusman") is a resident of Wailuku, Maui County, Hawaii.

52. Gusman desires to purchase an electric arm, a Taser, in Maui County, from MAGS.

53. Gusman is a member of HIFICO.

54. Gusman is not prohibited from owning, possessing or carrying a Taser or other electric arm under Hawaii law, and is not a prohibited person.

55. Gusman completed a three-hour Taser certification class, which is more than what Hawaii law requires under HRS § 134-84, so she could purchase a Taser.

56. But for Maui County unlawfully disallowing the sale of Tasers in Maui County, Gusman would purchase, own, possess and carry a Taser.

## COUNT I

## U.S. CONST., AMEND. II

57. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

58. The Defendants' custom, policy and practice of banning electric arms violates Plaintiffs' and HIFICO's members' Second Amendment rights.

59. Defendants' implementation of HRS § 134-81, *et seq.* is an unconstitutional burden on the protected Second Amendment rights of Plaintiffs and all those similarly situated as the Defendants' custom, policy and practice are in fact simply a continuation of Hawaii's now-repealed ban on electric arms and throughout the hearing on March 14, 2022, the Council members were more interested in what further restrictions, than what is allowed under Hawaii state law, could be imposed.

60. While Corporation Counsel advised the Council members that they needed to act to prevent a lawsuit, this is not a new or novel issue facing the Defendants, as they have been on notice since Governor Ige signed Act 183 into law on July 7, 2021.

61. Yet as of the date of this lawsuit, Defendants continue to violate the Second Amendment rights of Plaintiffs, Plaintiff HIFICO's members, and all similarly situated individuals in Maui County who wish to purchase an electric arm.

## COUNT II

### (DECLARATORY JUDGMENT)

62. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

63. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

64. Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

65. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

66. This Court possesses an independent basis for jurisdiction over the parties.

67. A judgment should issue declaring that Defendants' continued ban on the sale of electric arms violates the Second Amendment.

68. Defendants have wholly failed to implement Hawaii state law allowing the sale, ownership and possession of electric arms and Defendants' implementation is more akin to a continued ban.

69. Defendants' laws, customs and/or policies banning the sale of electric arms by the refusal to issue business licenses serves no substantial government interest and is not narrowly tailored to serve any government interest.

## COUNT III

### (LOST PROFITS)

70. Plaintiff MAGS repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

71. MAGS has been unable to sell inventory it specifically ordered in light of Hawaii's electric arm ban being repealed and replaced with a licensing scheme.

72. However, Defendants have failed to implement Hawaii state law and have not issued MAGS a business license to sell the electric arms inventory which MAGS would do in compliance with State law.

73. MAGS is a Federal Firearms Licensee in Maui County, Hawaii and otherwise in compliance with state and federal law, yet Maui County refuses to issue MAGS a business license to sell electric arms.

74. As such, MAGS has been damaged, in an amount to be determined at trial, by the Defendants' failure to issue a business license as required by Hawaii law. *See* HRS § 134-81, et seq.

75. Defendants' violation is especially egregious as Defendants have been on notice since July 7, 2021 when Governor Ige signed Act 183 into law, and yet still, Defendants have not implemented Hawaii law in a way that will allow anyone in Maui County to sell electric arms, in violation of state law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendants' custom, policy and practice of banning electric arms, including Tasers and stun guns;

2. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing an insurance requirement on dealers of electric arms that is not sufficiently tailored to a government interest;

3. Declaratory relief that the Defendants' implementation of HRS § 134-81, *et seq.* by maintaining Hawaii's previous ban on electric arms is unconstitutional;

4. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

5. Nominal Damages;

6. Lost profits for lost sales to MAGS for the Defendants' failure to issue a dealer's license;

7. Such other Declaratory relief consistent with the injunction as appropriate; and

8. Such other further relief as the Court deems just and appropriate.

Dated: March 30, 2022.

                                Respectfully submitted,

                                /s/ Alan Beck
                                Counsel for Plaintiffs

| | |
|---|---|
| Alan Alexander Beck | Donald L. Wilkerson |
| Law Office of Alan Beck | Attorney at Law |
| 2692 Harcourt Drive | P.O. Box 42 |
| San Diego, CA  92123 | Laupahoehoe, HI 95764 |
| (619) 905-9105 | (808) 533-4447 |
| Hawaii Bar No. 9145 | Hawaii Bar No. 5730 |
| Alan.alexander.beck@gmail.com | don@allislandslaw.com |

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*\* Pro Hac Vice Paperwork Forthcoming*

## **VERIFICATION**

I, Christy Gusman, declare as follows:

1. I am a Plaintiff in the present case and a resident of the State of Hawaii and I live in Maui County.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities, and my intentions are true and correct.

Executed on March **30**, 2022.

_____
Christy Gusman

## VERIFICATION

I, Todd Yukutake, declare as follows:

1. I am a board member of Hawaii Firearms Coalition ("HIFICO") which is a Plaintiff in the present case.

2. I have personal knowledge of HIFICO, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning HIFICO are true and correct.

Executed on March 30, 2022.

Todd Yukutake, on behalf of
Hawaii Firearms Coalition

## VERIFICATION

I, Mark Redeker, declare as follows:

1. My company, Maui Ammo and Gun Supply, is a Plaintiff in the present case and a Federal Firearm Licensee based in Maui County, Hawaii.

2. I have personal knowledge of myself, my activities, my intentions, and my business, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities, my intentions, and my business are true and correct.

Executed on March 30, 2022.

Mark Redeker