Alan Alexander Beck                     Donald L. Wilkerson
Law Office of Alan Beck                 Attorney at Law
2692 Harcourt Drive                     P.O. Box 42
San Diego, CA  92123                    Laupahoehoe, HI 95764
(619) 905-9105                          (808) 533-4447
Hawaii Bar No. 9145                     Hawaii Bar No. 5730
Alan.alexander.beck@gmail.com           don@allislandslaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
* *Admitted Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| MAUI AMMO AND GUN SUPPLY, HAWAII FIREARMS COALITION, and CHRISTY GUSMAN | ) ) ) MEMORANDUM IN SUPPORT ) OF PRELIMINARY INJUNCTION; ) CERTIFICATE OF SERVICE |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 22-138 JMS-RT ) ) Judge: Hon. J. Michael Seabright |
| MAUI COUNTY, HAWAII and MAUI COUNTY COUNCIL | ) Hearing: n/a ) Trial: n/a ) |
| Defendants. _____ | ) ) |

i

# TABLE OF CONTENTS

I.    Introduction ........................................................................................... *1*

II.   Preliminary Injunction Standards ......................................................2

    A.   Plaintiffs Have Standing to Bring this Lawsuit.................................2

III.  Plaintiffs Are Likely to Succeed on the Merits ...............................5

    A.   Electric Arms Are Protected By the Second Amendment .......................7

    B.   HIFICO's Maui Members and MAGS' Customers and Plaintiff Gusman Have A Corresponding Right To Purchase Electric Arms...........................10

    C.   This Court Should Apply Strict Scrutiny .................................................13

    D.   Even if Intermediate Scrutiny Applies, The County's Ban is Unconstitutional.............................................................................15

IV.   Plaintiffs Will Suffer Irreparable Harm........................................16

V.    Granting A Preliminary Injunction is in the Public Interest.........................17

VI.   The Balance of Equities Tips Sharply in Plaintiffs' Favor ...........................18

VII.  Waiver of Bond is Proper and Appropriate Under These Circumstances ....19

Conclusion .........................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1137 (9th Cir. 2011).2, 18

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ................................................................................................2

*Arlington Heights v. Metro. House. Dev. Corp.*, 429 U.S. 252 (1977) ....................3

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) ........................ 10, 15, 16

*Bryant v. Yellen,* 447 U.S. 352 (1980) .......................................................................3

*Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027 (2016).................. 5, 8, 9

*Commonwealth v. Caetano*, 470 Mass. 774, 26 N.E.3d 688 (2015) ........................8

*Craig v. Boren*, 429 U.S. 190 (1976)....................................................................3, 4

*District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637 (2008)............................................................. 6, 7, 10, 12, 13

*Donald J. Trump for President v. Cegavske*, 488 F. Supp. 3d 993 (D. Nev. 2020)..4

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) .............................................................17

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011) ............................. 4, 5, 11, 14, 17

*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *46-47, 2012 WL 2526923... 17, 18, 19

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) ........7

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)............................................................................4

*Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) .................................................................................... 11, 14

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)......................... passim

*Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).............. 17, 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)......................................................................................................................3

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) …..……………………………..17

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) .....................................16

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) .......................17

*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015)...........8

*O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475 (D.R.I. Mar. 15, 2022) .................................................................................................... 10, 16

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ...............................................................20

*People v. Webb*, 2019 IL 122951....................................................................................10

*People v. Yanna*, 297 Mich. App. 137, 824 N.W.2d 241 (2012) ............................8

*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). ....................................18

*Ramirez v. Commonwealth*, 479 Mass. 331, 94 N.E.3d 809, 815, 2018 Mass. LEXIS 237, 2018 WL 1801917................................................................................9

*Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)...................................18

*Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743 (N.D. Ill. 2015) ....11

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ...................................................5, 6

*Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ................................4, 11

*Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707 (1981) .......15

*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) ...........................5, 6

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) .......................18

*Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008).....................................2

*Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019)........................................................7

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ..............................13

*Yukutake v. Conners*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 153586 (D. Haw. Aug. 16, 2021) ..........................................................................................15

**Statutes**

HRS § 134-81.................................................................................................1

HRS § 134-90.................................................................................................1

**Treatises**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed.

 1995)..................................................................................................17

## I.    **Introduction**

On January 1, 2022, Act 183 took effect, legalizing the ownership and sale of electric arms (tasers and stun guns).[1]  The bill which legalized electric arms was signed by the Governor on July 7, 2021[2] and is codified at HRS § 134-81 to HRS § 134-90.  The only way an electric arm can be legally purchased in Hawaii is to purchase an electric arm from a licensed dealer. Despite being on notice since July 7, 2021, the County of Maui has failed to implement a mechanism to issue licenses to sell electric arms nearly four months after their legalization.  Thus, the County maintains what is effectively a complete ban on the ownership of electric arms.

Plaintiffs are a Maui County gun store who wishes to sell electric arms, a Maui County resident who wishes to purchase a Taser, and a Second Amendment advocacy group whose Maui members wish to purchase electric arms. The Defendant is the County of Maui who has been unwilling to issue permits to sell electric arms and the Maui County Council which has failed to promulgate a system for licenses to be issued.  Moreover, the Defendants' refusal to do so is a clear violation of Plaintiffs' Second Amendment rights.  The preliminary injunction should issue.

---

[1] https://www.capitol.hawaii.gov/session2021/bills/HB891_SD2_.HTM

[2] https://www.capitol.hawaii.gov/Archives/measure_indiv_Archives.aspx?billtype=HB&billnumber=891&year=2021

## II.   **Preliminary Injunction Standards**

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of injunction; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008)). In *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) the Ninth Circuit held if requirements (2) and (4) are satisfied, and the balance of hardships "tips sharply in the plaintiffs' favor," the plaintiff need only raise "serious questions going to the merits" to be entitled to injunctive relief. *Id*. at 1134-35 (holding that this aspect of the Ninth Circuit's sliding scale test survived *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008)). For the reasons laid out below, Plaintiffs easily fulfill the standard for preliminary injunction.

### A. **Plaintiffs Have Standing to Bring this Lawsuit**

All Plaintiffs in this matter have standing to pursue this lawsuit.

To satisfy Article III standing, a plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent,' not 'conjectural or hypothetical'; (2) a 'causal connection between the injury' and the challenged action of the defendant; and (3) that it is

'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014).

"An injury in fact is an 'invasion of a legally protected interest.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). In *Jackson,* in reviewing a ban on the sale of hollow point ammunition, the Ninth Circuit found that the Plaintiffs had standing to purchase ammunition despite San Francisco's argument that the Plaintiffs could purchase ammunition elsewhere and transport it to San Francisco. The "Second Amendment provides her with a 'legally protected interest,' *id.*, to purchase hollow-point ammunition, and that but for section 613.10(g), she would do so within San Francisco… Accordingly, [the statute] constitutes an injury in fact to Jackson, and she has standing to challenge it." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014).

Maui Ammo and Gun Supply's ("MAGS") customers, Ms. Gusman and Hawaii Firearm Coalition's ("HIFICO") members who wish to purchase electric arms do not solely due to the County's policies. This is sufficient to confer standing. *See Craig v. Boren*, 429 U.S. 190, 197 (1976), both beer sellers and underage persons (who would otherwise consummate beer transactions) had standing to challenge a drinking-age law that restricted the sale of 3.2% beer.; *see also Bryant v. Yellen,* 447 U.S. 352, 366-67 (1980) (plaintiffs would purchase land but for acreage limitation); *Arlington Heights v. Metro. House. Dev. Corp.*, 429 U.S. 252, 262-63 (1977)

3

(plaintiff had contract to purchase property that was contingent on repeal of zoning law).

MAGS brings this suit on behalf of itself and its customers. "'[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.' [*Craig*, 429 U.S. at195]." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). *See also Ezell v. City of Chi.*, 651 F.3d 684, 696 (7th Cir. 2011) ("Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban and is also permitted to 'act[] as [an] advocate[] of the rights of third parties who seek access to' its services.").

Plaintiff HIFICO has associational standing. "An entity may establish associational standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)." *Donald J. Trump for President v. Cegavske*, 488 F. Supp. 3d 993, 999 (D. Nev. 2020) (punctuation omitted).

Here, HIFICO satisfies that standard. HIFICO has members in Maui who would purchase an electric arm if local stores were able to sell them.  HIFICO's

purpose is to vindicate the Second Amendment rights of its member and all people in Hawaii. And no individual members need to participate in the lawsuit. HFC has "many members who reside in [Maui] and easily meet the requirements for associational standing: (1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." *Ezell,* 651 F.3d at 696. Therefore, HIFICO has associational standing to bring suit on behalf of its members. And of course, Ms. Gusman wants to purchase an electric arm, but cannot because the County won't allow dealers to sell them in Maui.

### III.    <u>Plaintiffs Are Likely to Succeed on the Merits</u>

By failing to issue licenses to sell electric arms, the County is maintaining what is effectively a ban on owning electric arms for self-defense. The Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the

[Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny. "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self-defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 961. That is the essence of the holding in *District of Columbia v. Heller*, 554 U.S. 570, 628-629 (2008). A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, the court may apply intermediate scrutiny." *Silvester*, 843 F.3d at 821. This Court should, therefore, find the policy at issue is categorically invalid under any level of scrutiny. If it does not, it should apply strict scrutiny to the County's policy. Regardless of whether this Court "implements an

'important government objective' (intermediate scrutiny) or a 'compelling state interest' (strict scrutiny)", these laws are "neither 'substantially related' nor 'narrowly tailored' to such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014).

## A. <u>Electric Arms Are Protected By the Second Amendment</u>

The Second Amendment protects arms. "[A]rms" refer to "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," *District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637, 647 (2008) (quotation marks and citations omitted). The electric arms at issue here fit with in that definition because they are designed to be borne by a single person to be used to attack or defend himself against others.   They are "arms" because they are bearable weapons.

*Heller* holds that once an item is established as an arm, it creates a rebuttal presumption that the arm receives Second Amendment protection: "*Heller* left no doubt that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Worman v. Healey*, 922 F.3d 26, 34 (1st Cir. 2019) (citation omitted). "In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State*

*Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). Thus, in *NYSRPA I*, the Second Circuit struck a ban on a pump-action rifle because the state focused exclusively on semiautomatic weapons and "the presumption that the Amendment applies remain[ed] unrebutted." 804 F.3d at 257.  There is no dispute that electric arms at issue are bearable arms because they can be held by a person to attack another person or to defend the user from an attack. Thus, the burden is on the government to show that they are not usual protected arms. Defendants cannot rebut that presumption.  This Court should find that electric arms are protected by the Second Amendment.

The court system has universally found that electric arms are protected by the Second Amendment and thus, cannot be banned.  The Hawaii legislature acknowledged this consensus last year when it legalized electric arms for civilian use. The first court to find electric arms are protected arms was the Michigan Court of Appeals. "We therefore hold that a complete ban on Tasers and stun guns in the home violates the Second Amendment." *People v. Yanna*, 297 Mich. App. 137, 146, 824 N.W.2d 241, 246 (2012).  After the *Yanna* opinion, the United States Supreme Court weighed in on this issue. It reversed the opinion of the Massachusetts Supreme Judicial Court in *Commonwealth v. Caetano*, 470 Mass. 774, 26 N.E.3d 688 (2015).

"[T]he Supreme Judicial Court of Massachusetts upheld a Massachusetts law prohibiting the possession of stun guns after examining 'whether a stun gun is the

type of weapon contemplated by Congress in 1789 as being protected by the Second Amendment.'" *Caetano v. Massachusetts*, 577 U.S. 411, 411, 136 S. Ct. 1027, 1027 (2016). The Supreme Court found the explanation the Massachusetts court "offered for upholding the law contradicts this Court's precedent" and remanded the case back for further proceedings. *Caetano*, 577 U.S. at 412. Justice Alito wrote a concurrence (joined by Justice Thomas) that expressly found electric arms are protected by the Second Amendment. "While less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country. Massachusetts' categorical ban of such weapons therefore violates the Second Amendment." *Caetano,* 577 U.S. at 420 (Alito, J., concurring).

A bevy of cases followed this opinion which all expressly found that electric arms are protected arms.  "Having received guidance from the Supreme Court in *Caetano II*, we now conclude that stun guns are 'arms' within the protection of the Second Amendment". *Ramirez v. Commonwealth*, 479 Mass. 331, 337, 94 N.E.3d 809, 815, 2018 Mass. LEXIS 237, *11, 2018 WL 1801917. Judge David N. Hurd, of the Northern District of New York, held that New York's ban on electric arms "… is an unconstitutional restriction on the right to bear arms[]" and that "New York's sweeping prohibition on the possession and use of tasers and stun guns by all citizens for all purposes, even for self-defense in one's own home, must be declared

unconstitutional in light of [*Heller*]." *Avitabile v. Beach*, 368 F. Supp. 3d 404, 421 (N.D.N.Y. 2019).

The Supreme Court of Illinois found a statute banning the carry of Tasers and stun guns unconstitutional because Illinois' provision on carriage of weapons sets forth a comprehensive ban that categorically prohibits possession and carriage "… of stun guns and tasers in public." *People v. Webb*, 2019 IL 122951, ¶ 20.  And, because it is a categorical ban, "… that provision necessarily cannot stand." *Id.* at ¶ 21.  The Illinois Supreme Court held that the portion of the statute prohibiting "… the carriage or possession of stun guns and tasers is facially unconstitutional under the second amendment." *Id*.

Most recently, the federal court for Rhode Island struck, Rhode Island's ban on electric arms as unconstitutional.  "The total ban of stun guns contained in R.I. Gen. Laws § 11-47-42(a)(1) clearly lacks the required 'substantial' fit between the asserted governmental interest and the means chosen to advance those interests, and accordingly, violates the Second Amendment." *O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475, at *30 (D.R.I. Mar. 15, 2022).

Electric arms are legal now legal to own in all fifty states.  As a consensus of courts have found, electric arms are protected by the Second Amendment. Therefore, Plaintiffs have a corresponding right to purchase them.

## B. <u>HIFICO's Maui Members and MAGS' Customers and Plaintiff Gusman Have A Corresponding Right To Purchase Electric Arms</u>

As established above, electric arms are protected by the Second Amendment. Therefore, pursuant to this circuit's precedent, Plaintiffs have a corresponding right to purchase electric arms. In *Jackson*, the Ninth Circuit found that ammunition is protected by the Second Amendment, and one thus has a right to purchase it. "'[T]he right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011). The same applies here. As electric arms are protected by the Second Amendment, Plaintiffs have a corresponding right to purchase electric arms. This is in line with another authority on point. "[A] complete ban on sales is the type of zoning restriction that would give rise to a Second Amendment violation". *Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 753 (N.D. Ill. 2015). *Ill. Ass'n of Firearms Retailers v. City of Chi* the Court found Chicago's "flat ban on legitimate sales and transfers" was unconstitutional. *Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928, 947 (N.D. Ill. 2014).

"[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). While it is true that in theory, plaintiffs could purchase a electric arm on the mainland, this would be prohibitively expensive. And even if the other counties are selling electric arms, flying to another

island is a substantial burden on the right to acquire them. Maui County is maintaining a ban on the sale of electric arms by failing to issue licenses and therefore, Maui County maintains a practice creating a flat ban on electric arms. Therefore, this Court should apply a categorical approach to Maui's policy of not issuing licenses and simply find that its policy is per se unconstitutional. However, even under the lowest level of scrutiny applicable (intermediate), Maui's policy is unconstitutional.

"A law that imposes such a severe restriction on the core right of self-defense that it 'amounts to a destruction of the [Second Amendment] right,' is unconstitutional under any level of scrutiny. *Heller*, 554 U.S. at 629 (internal quotations omitted). By contrast, if a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). Here, Maui's policy effectively destroys the right to own a electric arm because it is impossible to purchase an electric arm in Maui County. While in theory one could go to the mainland to purchase one, that is not a practical solution. Even if other counties sell electric arms, requiring a prospective purchaser to buy a plane ticket, go to the airport, travel to another island, make the purchase, check the electric arm into baggage at the terminal, then fly back home is not a practical choice for Plaintiffs. What is important is that there is no

mechanism to purchase one in Maui County.  Therefore, the County's policy is a substantial burden on the core right to self-defense and strict scrutiny should apply.

## C. **This Court Should Apply Strict Scrutiny**

In analyzing the first prong of the second step, the extent to which the law burdens the core of the Second Amendment right, we rely on *Heller*'s holding that the Second Amendment has "the core lawful purpose of self-defense," 554 U.S. at 630, and that "whatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014).  "The core or central component of the Second Amendment right to keep and bear arms protects individual self-defense … by law-abiding, responsible citizens." *Wrenn v. District of Columbia*, 864 F.3d 650, 657 (D.C. Cir. 2017) (internal citation and quotation omitted).

Here, Maui's policy strikes at the core of the Second Amendment because it stops Plaintiffs from owning electric arms for self-defense.  It also substantially burdens that core right because it effectively bans the ownership of electric arms in the County of Maui.  Therefore, this matter is distinguishable from *Jackson v. San Francisco*.  "A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense." *Jackson*, 746 F.3d at 968.  Further, if one wished to purchase the prohibited ammunition at issue in *Jackson*,

one could easily travel to Alameda County which is a short drive, literally adjacent to San Francisco County.  Here, Maui completely bans the sale of electric arms, and even if the other counties allow their sale, it would require a plane trip to acquire one.  Maui County's policy is a substantial burden on the core right to self-defense. The closest case on point is *Ill. Ass'n of Firearms Retailers v. City of Chi.* which deals with Chicago's ban on gun stores.  There the court found that a level of scrutiny higher than intermediate was appropriate. "[A]lthough these ordinances do not prevent the use of firearms for self-defense, they sweepingly prevent the acquisition of firearms within Chicago, via both legitimate sales and other transfers, such as gifts. And under *Ezell,* 'serious encroachments' on 'important corollar[ies] to the meaningful exercise of the core right to possess firearms for self-defense' are substantial burdens that deserve more stringent scrutiny than intermediate scrutiny." *Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014).  It also has similarities to *Ezell*, where the plaintiffs "challenge[d] the City Council's treatment of firing ranges. The Ordinance mandates one hour of range training as a prerequisite to lawful gun ownership, [] yet at the same time prohibits all firing ranges in the city." *Ezell v. City of Chi.*, 651 F.3d 684, 689-90 (7th Cir. 2011).  The 7th Circuit enjoined this ban applying a level of scrutiny higher than strict. *Id*. at 708.

14

Plaintiffs' challenge deserve strict scrutiny.  In order to survive strict scrutiny the County must show a compelling government interest to banning these arms that is narrowly tailored to achieve that interest.  *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest."). Here, there is no compelling government interest in banning arms that are less dangerous than handguns and that the Hawaii legislature has made lawful to own.  Furthermore, the County's complete ban on sale is not narrowly tailored.

### D. Even if Intermediate Scrutiny Applies, The County's Ban is Unconstitutional

Even if this Court applies intermediate scrutiny, the County's ban on the sale of electric arms is unconstitutional. "To survive intermediate scrutiny, the Government must demonstrate a 'significant, substantial, or important' government interest and must show that there is a 'reasonable fit between the challenged regulation and the asserted objective.'" *Yukutake v. Conners*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 153586, at *25-26 (D. Haw. Aug. 16, 2021).  Here, as multiple courts have found, even under intermediate scrutiny, a ban on electric arms is unconstitutional.  In *Avitabile v. Beach,* 368 F. Supp. 3d 404 (N.D.N.Y. 2019*)*, the Court struck New York's ban on electric arms under intermediate scrutiny. "The

State has not introduced substantial evidence from which it could be reasonably inferred that *complete* bans on tasers and stun guns, even ones kept in the home of a law-abiding citizen like Avitabile, are 'substantially related' to the admittedly compelling interests in public safety and crime prevention. Accordingly, § 265.01(1), as applied to 'electronic dart guns' and 'electronic stun guns,' must be invalidated as unconstitutional." *Avitabile v. Beach*, 368 F. Supp. 3d 404, 421 (N.D.N.Y. 2019).

Similarly, the Rhode Island federal court found "[t]he total ban of stun guns contained in R.I. Gen. Laws § 11-47-42(a)(1) clearly lacks the required 'substantial' fit between the asserted governmental interest and the means chosen to advance those interests, and accordingly, violates the Second Amendment." *O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475, at *30 (D.R.I. Mar. 15, 2022). *See also Maloney v. Singas*, 351 F. Supp. 3d 222 (E.D.N.Y. 2018) (striking New York's ban on nun chucks).  The County can not justify its ban even if this Court applies intermediate scrutiny.

## IV.    <u>Plaintiffs Will Suffer Irreparable Harm</u>

If this Court concludes that Plaintiffs are likely to prevail on their constitutional claims, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *See McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010); *see also Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable and having no adequate remedy at law."). This Court should conclude "that Plaintiff has established a likelihood of irreparable harm…At issue in this litigation is the alleged infringement of Plaintiff's right to bear arms for self-defense …, the very right that the *Ezell* court considered." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

## V.   <u>Granting A Preliminary Injunction is in the Public Interest</u>

For similar reasons, granting a preliminary injunction is clearly in the public interest. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the

Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public interest thus tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208. Moreover, the County has no plausible argument that enjoining enforcement of its denial will unduly endanger public safety. The Court should conclude "that it is in the public interest to uphold Plaintiff's Constitutional right to bear arms in self-defense …, and accordingly finds that this factor weighs in favor of granting the preliminary injunction." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923.

## VI.   The Balance of Equities Tips Sharply in Plaintiffs' Favor

Finally, the balance of equities tips sharply in Plaintiffs' favor. This factor considers "the balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1137 (9th Cir. 2011). In contrast to Plaintiffs' and the public's many injuries, the County will suffer no concrete harm from a preliminary injunction. The County "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)).  In ruling on a preliminary injunction in *Fisher v Kealoha,*

which as established above dealt with similar facts, this Court found that "in the absence of a preliminary injunction, Plaintiff will be denied the use and enjoyment of firearms and will be unable to exercise his Second Amendment right to bear arms for self-defense within the home when he has demonstrated a likelihood of success in establishing his statutory qualification under state and federal law. For these reasons, the Court concludes that the balance of the equities tip in Plaintiff's favor". *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *46-47, 2012 WL 2526923. This Court should find the same here.

## VII.   <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her

conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

## Conclusion

The Hawaii Legislature has spoken.  Hawaii's citizens have a right to own electric arms.  The County's policy should be enjoined for the pendency of litigation.

Dated: March 31, 2022.

*/s/ Alan Alexander Beck*
Alan Alexander Beck